[Civ. No. 27187. Second Dist., Div. One. Sept. 11, 1963.]

HARRIETTE L. O'BRIEN, Plaintiff and Respondent, v. CITY OF SANTA MONICA, Defendant and Appellant.

Robert G. Cockins, City Attorney, Robert D. Ogle, Assistant City Attorney, James H. Baggaley and Dennis Fredrickson, Deputy City Attorneys, for Defendant and Appellant.

Buchalter, Nemer, Fields & Savitch and Stephen Chrystie for Plaintiff and Respondent.

LILLIE, J.—Plaintiff, a passenger on a bus operated by the City of Santa Monica, was injured on October 19, 1961, when the driver closed the door on her head and knees. On August 15, 1962, she filed a petition for leave to file a claim against the city under section 716, Government Code; it was

denied by minute order of August 29, 1962. On October 15, 1962, plaintiff moved the court to reconsider, vacate and set aside the order denying the petition, and grant leave to file her claim; the motion was granted on October 19, 1962, and the court vacated the August 29th order, restored petition to the calendar, and granted the same and leave to file claim. From this order the city appeals. Its first contention is that the August 29th minute order denying the petition was final and appealable, thus, the court acted in excess of its jurisdiction in ruling upon and granting the motion to reconsider.

■ While an order denying petition for leave to file a claim under section 716, Government Code, is final and appealable (*Thompson* v. *County of Fresno,* 59 Cal.2d 686 [31 Cal.Rptr. 44, 381 P.2d 924]), it does not preclude the trial court from reconsidering and setting it aside on a proper motion timely made. (*Harth* v. *Ten Eyck,* 16 Cal.2d 829 [108 P.2d 675]; *Bice* v. *Stevens,* 160 Cal.App.2d 222 [325 P.2d 244].)

■ In all ordinary motions it is in the discretionary power of the court hearing and denying a motion to grant leave for its renewal, and "this discretion will not be interfered with, except in cases of palpable abuse." (*Hitchcock* v. *McElrath,* 69 Cal. 634, 635 [11 P. 487]; *Johnson* v. *Brown,* 115 Cal. 694 [47 P. 686]; *Mission Film Corp.* v. *Chadwick P. Corp.,* 207 Cal. 386 [278 P. 855]; *Tiffany Production, Inc.* v. *Superior Court,* 131 Cal.App. 729 [22 P.2d 275].)

■■ The court can permit renewal of a motion even though it has been previously denied on its merits (*Hover* v. *MacKenzie,* 122 Cal.App.2d 852 [266 P.2d 60]; *Harth* v. *Ten Eyck,* 16 Cal. 2d 829 [108 P.2d 675]; *Dahlin* v. *Moon,* 141 Cal.App.2d 1 [296 P.2d 344]; *Bice* v. *Stevens,* 160 Cal.App.2d 222 [325 P.2d 244]); and, unlike the final determination of an action or proceeding by judgment, the decision on an ordinary motion is not res judicata and the court has jurisdiction to reconsider it. (*Johnston* v. *Brown,* 115 Cal. 694 [47 P. 686]; *Harth* v. *Ten Eyck,* 16 Cal.2d 829 [108 P.2d 675]; *Tiffany Productions, Inc.* v. *Superior Court,* 131 Cal.App. 729 [22 P.2d 275].) Although in many of the above cases both motions were made under section 473, Code of Civil Procedure, the principle is the same as herein where the motions were made under section 716, Government Code, both statutes, being remedial in nature and entitled to a liberal construction.

■ After denial of her petition plaintiff filed, not a new

application, as under section 1008, Code of Civil Procedure (even the requirements of this section do not go to the jurisdiction of the court to entertain a second motion (*Andersen* v. *Superior Court,* 187 Cal. 95 [200 P. 963]; *Imperial Beverage Co.* v. *Superior Court,* 24 Cal.2d 627 [150 P.2d 881]; *Moore* v. *Moore,* 133 Cal.App.2d 56 [283 P.2d 338]; *Radlinski* v. *Superior Court,* 186 Cal.App.2d 821 [9 Cal.Rptr. 73]), but, a motion to reconsider petition, vacate and set aside order denying petition and grant leave to file her claim. The trial court in its discretion determined to reconsider the matter and heard and ruled on the motion as a renewal of the petition; thus we treat the order of October 23, 1962, granting the same, vacating the order of August 29, 1962, and restoring the petition to the calendar, as tantamount to permission to renew the original petition. (*Harth* v. *Ten Eyck,* 16 Cal.2d 829 [108 P.2d 675]; *Bice* v. *Stevens* 160 Cal.App.2d 222 [325 P.2d 244].) On the power of the trial court to reconsider its denial of a motion in the absence of a different showing, the court in *Harth* v. *Ten Eyck,* 16 Cal.2d 829 [108 P.2d 675], said: "Although the second motion was called a motion to reconsider, the reasonable import of the action of the court . . . is that the court considered it a renewal of the motion to set aside its previous order of denial and to grant the original motions. . . . With the motion then before it the court had the power to dispose of it and to set aside the order of dismissal." (Pp. 832, 833.) To the same effect are *Bice* v. *Stevens,* 160 Cal.App.2d 222 [325 P.2d 244]; *Imperial Beverage Co.* v. *Superior Court,* 24 Cal.2d 627, 634 [150 P.2d 881]; *Beyerbach* v. *Juno Oil Co.,* 42 Cal.2d 11, 29 [265 P.2d 1]; *Hover* v. *MacKenzie,* 122 Cal.App. 2d 852, 857 [266 P.2d 60]; *Stephens* v. *Baker & Baker Roofing Co.,* 130 Cal.App.2d 765, 773 [280 P.2d 39]; *Dahlin* v. *Moon,* 141 Cal.App.2d 1, 4 [296 P.2d 344]. In *Majors* v. *County of Merced,* 207 Cal.App.2d 427 [24 Cal.Rptr. 610], a similar argument was made; the court disposed of it as follows: "Respondent observes that the time for an appeal cannot be extended by the mere repetition of identical motions, but here the second motion was a renewal of the first with the implied consent of the court (*Tiffany Productions, Inc.* v. *Superior Court,* 131 Cal.App. 729, 737 - 738 [22 P.2d 275]), and the court had jurisdiction to hear it (*Andersen* v. *Superior Court,* 187 Cal. 95, 102 [200 P. 963]), from which it follows that the appeal was properly taken from the second ruling. (*Bice* v. *Stevens,* 160 Cal.App.2d 222 [325 P.2d

244]; *Harth* v. *Ten Eyck*, 16 Cal.2d 829, 832-833 [108 P.2d 675]; *Hover* v. *MacKenzie,* 122 Cal.App.2d 852, 857 [266 P.2d 60].)'' (P. 435.)

 Thus, the court, in its discretion, having determined to reconsider the matter, and having the renewal motion before it on the conflicting affidavits already on file, its power then to weigh the conflicts and dispose of the petition was the same as upon its first consideration thereof; its power to resolve the conflicts was not exhausted by its conclusions on the order denying the petition, but it had the power to reexamine the evidence and arrive at a different conclusion, if it thought the ends of justice would be best served thereby. Whether the truth and right of the matter lay with the plaintiff or with the City ''might not appear so clear on a first examination of the facts presented. A more thorough examination might, and in fact did, lead to a contrary conclusion.'' (*Harth* v. *Ten Eyck,* 16 Cal.2d 829, 834 [108 P.2d 675].)

Appellant's final contention is that plaintiff failed to prove, ''as conditions precedent'' to relief under section 716, that the city will not be unduly prejudiced, that she was physically incapacitated during such time as she should have filed her claim, and that she failed to file it by reason of such disability. (A.O.B., p. 5.)

The verified petition alleges plaintiff's age as 77, and the time, place and manner in which she was injured; that she suffered ''serious physical and mental trauma'' therefrom and ''has been hospitalized or bedridden since the time of said occurrence,'' giving specific places and dates constituting a continuous six-month period; that during the six months permitted under the charter for filing her claim she was ''physically incapacitated'' and by reason of such disability unable to file the same; that the city ''was informed concerning the time, place and nature of the occurrences which gave rise to'' her claim and ''that the granting of this petition will not unduly prejudice the City.'' Her claim for damages in the sum of $27,129.06 was attached thereto. Supporting the petition was the affidavit of Frank Koops, plaintiff's son-in-law, alleging that on her behalf he contacted the city on the day after the accident (October 20, 1961) and was referred to Bay Cities Adjustment Co.; that he reported the ''full nature and extent of the occurrences giving rise to the claim of Harriette L. O'Brien, as then known to him,'' to Mr. Barrett, manager of Bay Cities; that

on October 23, 1961, Barrett by letter (Ex. A) acknowledged his call and ''this claim'' and that thereafter in several conversations with Barrett he was informed that plaintiff's claim was under consideration. Barrett's letter to Koops dated October 23, 1961, (Ex. A) acknowledged this telephone conversation of October 20, and advised that he was enclosing ''medical report forms to be duly completed by Dr. J. Robert Tolle, physician for your mother-in-law, Mrs. Harriette O'Brien,'' and that he would contact Koops ''to further discuss this claim'' upon their receipt.

In opposition were two affidavits: Meyer, the bus driver, asserted that the door of the bus closed ''apparently striking'' plaintiff knocking off her glasses; that she said the door hit her knee; and that inasmuch as her glasses were not damaged, he observed no injury, she made no complaint, and she walked away without help, he failed to obtain the names of witnesses whom he cannot now identify. Barrett, contractor adjuster for the city, alleged that Koops called him on October 20, 1961, indicating ''possible injury to plaintiff''; that on October 23, he forwarded to Koops medical report forms but received no response until March 7, 1962; that on March 20, 1962, he received completed forms from the doctor, which was the first positive evidence he had that Mrs. O'Brien had been injured; that had he known of her injury he would have had her examined immediately; and that because of their failure to respond and return the reports Bay Cities was lulled into the belief that plaintiff suffered no injury.

Three declarations support plaintiff's motion for reconsideration. In the first, Koops alleged that Barrett's letter of October 23 contained no medical report forms and that in spite of various requests Barrett did not send them to Dr. Tolle until March 1962; that he repeatedly called Barrett's office relative to the forms, advised plaintiff was in the hospital, and was misled by representatives of the city believing the claim was still under consideration. The declarations of Mrs. Koops and Miss Neilson, the doctor's nurse, relate primarily to the difficulty of obtaining medical report forms from Barrett, and allege that on March 7, 1962, Dr. Tolle finally received and completed them.

█ As expressly required, the motion was ''determined upon the basis of the verified petition [and] any affidavits in support of or in opposition thereto, . . .'' (Gov. Code, § 716.) Most material factual matters therein are not in

dispute; as to others the affidavits reveal a conflict. In accord with the rules on appeal we accept those facts favoring respondent and deem her affidavits not only to establish the facts directly stated therein but all facts reasonably to be inferred therefrom. (*DeWit* v. *Glazier,* 149 Cal.App.2d 75 [307 P.2d 1031]; *Clapp* v. *Kramer,* 162 Cal.App.2d 237 [328 P.2d 510]; *West Coast Secur. Co.* v. *Kilbourn,* 110 Cal. App. 293 [294 P.57].) The trial court had a right to, and did herein, ''[choose] to decide the motion in accordance with the allegations of plaintiff's affidavits rather than those of defendant.'' (*Tanzola* v. *De Rita,* 45 Cal.2d 1 [285 P.2d 897].)

██ With appellant's claim that certain allegations in the verified petition are conclusions of law or opinions and incompetent statements, we do not agree, but even so, in the absence of any objection to their use in the lower court, they became competent evidence. The rule is stated in *Falk* v. *Falk,* 48 Cal.App.2d 780, 789 [120 P.2d 724]: ''The appellant contends that plaintiff's affidavit is incompetent evidence for the reason that it contains averments which are hearsay and which amount to mere conclusions. Even conceding that many of the averments of the affidavit are conclusions or hearsay, they [become] competent evidence for the reason that they [are] admitted without objection.'' (See, also, *Soares* v. *Ghisletta,* 1 Cal.App.2d 402 [36 P.2d 668]; *Wright* v. *Mutz,* 61 Cal.App.2d 292 [142 P.2d 781], *Fallon* v. *Fallon,* 86 Cal.App.2d 872, [195 P.2d 878]; *Vartanian* v. *Croll,* 117 Cal.App.2d 639, 647-648 [256 P.2d 1022]; *Tanzola* v. *De Rita,* 45 Cal.2d 1 [285 P.2d 897].)

Under section 715, Government Code, a claim against the local public entity relating to a cause of action for physical injury must be presented not later than the 100th day after the accrual of the cause of action. ''Section 716 provides that the superior court shall grant leave to present a claim after the expiration of the time specified in section 715 if the entity against which the claim is made will not be unduly prejudiced thereby and if the claimant was physically or mentally incapacitated during all of such time and by reason of such disability failed to present a claim during such time.'' (*Thompson* v. *County of Fresno,* 59 Cal.2d 686, 687 [31 Cal.Rptr. 44, 381 P.2d 924].) ██ Section 716 is comparatively new, enacted in 1959 as part of a general revision of the California law governing procedural requirements for recovery of damages against public entities. It is clearly remedial, designed to protect a just claim from a

technical defense which might bar its presentation; as a remedial statute it demands a liberal construction in favor of the remedy. (*Thompson* v. *Sutton,* 50 Cal.App.2d 272 [122 P.2d 975]; *Buck* v. *City of Eureka,* 97 Cal. 135 [31 P. 845].)

Without going into the issue of whether proof by plaintiff that the city will not be prejudiced, that she was physically incapacitated and that she failed to present her claim by reason of such disability are "conditions precedent" to relief under section 716, and whether this precludes relief on any other ground, it is our opinion that plaintiff comes within the purview and intent of the statute and, having established the existence of all of the elements above mentioned, is "unequivocally entitled to relief." (*Thompson* v. *County of Fresno,* 59 Cal.2d, 686, 687 [31 Cal.Rptr. 44, 381 P.2d 924].)

The undisputed facts in the verified petition and Koops' affidavit clearly reveal that the city will not be unduly prejudiced if she is permitted to present her claim. On the day after the accident the city, through its representative Barrett, "was informed concerning the time, place and nature of the occurrences which gave rise to her claim" by Koops who reported to him the full nature and extent thereof. From this and Barrett's letter to Koops purportedly enclosing "medical report forms to be duly completed by Dr. J. Robert Tolle, physician for your mother-in-law," and advising that upon their return he would contact Koops "to further discuss *this claim,*" the only reasonable inference is that the city, the day after the accident, knew the details of the accident, that plaintiff had been injured and that she had a claim against it, and the name and address of the person then acting on her behalf and to whom correspondence could be forwarded. Had the city then wanted to investigate the accident and the full extent of plaintiff's injuries it could well have done so. If any undue prejudice results to the city, it will be due to its own failure to act, not to the late filing of Mrs. O'Brien's claim. Except for the exact amount of damage and the full extent of her injuries, it appears that plaintiff may have orally given to the city sufficient information to constitute a claim the day after the accident occurred. We do not here have the situation wherein the claimant remains silent for the period during which a claim may be filed leaving the public entity unaware of an accident, injury and possible claim, thereby precluding it from making an effective investigation.

Also undisputed are plaintiff's physical incapacity and inability, because of it, to attend to her business and legal concerns. Her petition alleges that she was 77 years old when the accident occurred, that from the act of the bus driver closing the door on her head and knees serious physical and mental trauma resulted, and that since then she has been hospitalized or bedridden; and sets up in detail the places where and the time she was confined, constituting a full six-month period. From this it is reasonable to infer that during that time she was physically incapacitated and, as such, incapable of tending to the details of filing a claim. Moreover her allegation that she was "physically incapacitated during all of the time . . . and by reason of such disability, failed to present a claim during such time" is uncontradicted. That Koops might have filed a claim on plaintiff's behalf is not sufficient to deny her relief. Further, there is evidence that during that time Koops was misled by Barrett's office into believing that no action on plaintiff's part was necessary until the medical report forms were filed; and that it was the fault of the city that the forms were not timely forwarded to the doctor. Material to this point is the Supreme Court's statement in *Thompson* v. *County of Fresno,* at page 689: "The requirement of section 716 that the failure to present the claim within the 100-day period be 'by reason of such disability' does not mean that the disability must be the sole reason for the delay." (59 Cal.2d 686, 689.)

For the foregoing reasons the order is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 6, 1963.